**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

CHRISTON MITCHELL,
  Plaintiff,

   v.            Case No. 3:24-CV-864 (VAB)

CRAIG WASHINGTON, et al,
  Defendants.

## INITIAL REVIEW ORDER

Christon Mitchell, a sentenced inmate at Corrigan-Radgowski Correctional Center ("Corrigan")[1], has filed a *pro se* Complaint naming four Defendants employed by Cheshire Correctional Institution ("Cheshire"), where Plaintiff was formerly imprisoned. ECF No. 1 ¶¶ 2–6. Mr. Mitchell alleges that these officials violated his constitutional rights by unfairly placing him in restrictive housing while at Cheshire. *Id.* ¶¶ 32–35. Mr. Mitchell seeks monetary damages and an injunction ordering defendants to release him from the SRG unit and place him back into the general population. *Id.* ¶¶ 36–38.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, this Court must dismiss the

---

[1] *See* Department of Correction, *Offender Information Search*, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=347427 (last visited June 14, 2024). The court may take judicial notice of this website. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information); *Ligon v. Doherty*, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate locator information).

complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the Complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

Based on this initial review, only Plaintiff's First Amendment retaliation claim survives initial review.

All of the Complaint's other claims are **DISMISSED** without prejudice.

Any proposed Amended Complaint must be filed by **January 17, 2025.** If a proposed Amended Complaint is not filed by **January 17, 2025**, this case will proceed on only the First Amendment retaliation claim, and the appropriate scheduling order for that claim only will be issued by the Court.

## I.    FACTUAL BACKGROUND[2]

While at Cheshire on December 22, 2023, correctional officer LaPointe issued an allegedly "improper" disciplinary report regarding Mr. Mitchell.[3] Complaint, ECF No. 1 ¶¶ 8–9. Correctional Officer Rivera delivered the report to him. *Id.* ¶ 28. Mr. Mitchell claims that the report was improper because it had no report number or text on the back of the

---

[2] While all the facts alleged in Plaintiff's Complaint are set forth, this section summarizes the basic factual allegations necessary to give context to its ruling below.

[3] Plaintiff included a copy of the report with his complaint. *See* ECF No. 1 at 7.

report. *Id.* ¶ 9.Mr. Mitchell allegedly had been strip-searched and sent to the restrictive

housing unit on the same day he received the report. *Id.* ¶¶ 10–11. Mr. Mitchell further

alleges that his hearing was conducted "well after" twenty-four hours from receiving the

report. *Id.* ¶ 13. At the disciplinary hearing, Mr. Mitchell allegedly was accused and

found guilty of having "SRG contents,"[4] *id.* ¶ 17, based on "Social Media Post and

Pictures which ha[d] nothing to do with D.O.C. and/or 9.5 Administrative Directive" and

Mr. Mitchell's alleged nickname, which is his registered and licensed professional artist

name. *Id.* ¶¶ 15–16. Mr. Mitchell claims that "no physical evidence was shown to [him]

in accordance with A.D. 9.4 and A.D. 9.5," that he was "lied on," and that he was found

guilty "base[d] off [a]rbitrary [j]udgment." *Id.* ¶¶ 12, 14.

After the hearing, prison officials allegedly placed Mr. Mitchell in Phase 2 of the

SRG unit. ECF No. 1 ¶ 19. There, he allegedly could have no more than three phone

calls per week, and without any access to electronics or e-mails. *Id.* ¶ 20. The prison

allegedly placed limits on his commissary, separated him from the general population,

and did not allow his participation in programming or treatment, or to attend religious

services. *Id.* ¶ 21. Mr. Mitchell also allegedly did not receive proper medical or mental

---

[4] "SRG" is an acronym for Security Risk Group.  According to the Connecticut
DOC website, the "Security Risk Group/Gang Management Unit is responsible for
proactively collecting, evaluating and disseminating security related gang intelligence on
the 13 designated Security Risk Groups that exist among the offender population."
Connecticut State DOC, *Security Risk Group/Gang Management Unit*,
https://portal.ct.gov/doc/org/security-risk-groups-unit (last visited June 14, 2024). The
Court can take judicial notice of DOC's website. *See Simms v. Cuzio*, No.
3:21CV00492(SALM), 2022 WL 3107150, at *5 n. 3 (D. Conn. Aug. 4, 2022).

health treatment in the SRG unit and could not access the law library or seek the assistance of Legal Aid. *Id.* ¶¶ 22–23. Inmates in the SRG unit allegedly are forced to forfeit good-time credit and forgo early release programs. *Id.* ¶ 24. Inmates in this unit are also allegedly ineligible to continue their education through the Pell program. *Id.* ¶ 25. Inmates in the SRG unit allegedly are locked in the unit all day and are not given proper cleaning supplies. *Id.* ¶ 26.

Mr. Mitchell allegedly appealed the disciplinary finding to Craig Washington, ECF No. 1 ¶ 29, who allegedly denied his appeal. *Id.* at 6. Mr. Mitchell allegedly spoke with SRG Coordinator PaPoosha, who told him, "'you['re] guilty, I gotta do what I gotta do to keep this program alive[ ],'" and then laughed. *Id.* ¶ 30.

## II.    DISCUSSION

### A.

The Court liberally construes Plaintiff's Complaint as alleging four claims: (1) a First Amendment retaliation claim for placing Plaintiff in the SRG unit because of his social media posts and nickname; (2) a Fourteenth Amendment claim for placing Plaintiff in the SRG unit without adequate procedural due process; (3) an Eighth Amendment cruel and unusual punishment claim related to the conditions of the SRG unit; and (4) an Eighth Amendment deliberate indifference claim for placing Plaintiff in the SRG unit without regard for his health and safety. ECF No. 1 ¶¶ 32–35.

The Court will address each of these claims in turn.

### A. The First Amendment Retaliation Claim

To state a cognizable First Amendment retaliation claim, Plaintiff must allege: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)).

Plaintiff alleges defendants violated his First Amendment rights by placing him in the SRG unit based on his social media content and nickname. *See* ECF No. 1 ¶¶ 15–17, 34. This issue has been considered before in this district in *Caves v. Payne*. No. 3:20-cv-15 (KAD), 2020 WL 1676916 (D. Conn. April 6, 2020) (plaintiff claimed the same constitutional right was violated when prison officials placed him in the SRG program because of his social media posts). There, a prisoner's social media posts were protected speech under the First Amendment, in satisfaction of the first element. *See Caves*, 2020 WL 1676916, at * 4. And the prisoner's placement in the SRG unit because of his social media posts constituted an "adverse action against the plaintiff," in satisfaction of the second element. *See id.* But the Caves' allegation that "the action was taken solely because he posted on social media," which is similar to the allegation here, *see* ECF No. 1 ¶¶ 15–16, "[wa]s not enough to satisfy the third element, a causal connection between the adverse action and the protected speech." *Caves*, No. 3:20-CV-15 (KAD), 2020 WL 1676916, at *4. Although in a similar case, these allegations have survived initial review, *see Kelly v.* Santiago, No. 3:18-cv-01796-VAB, 2019 WL 3574631, at *5–6 (D. Conn. Aug. 6, 2019) (allowing similar claim to proceed to discovery), this case is slightly different. According to the disciplinary report attached to

5

Plaintiff's complaint and relied on by the hearing officer, Plaintiff was also "openly discussing the recruitment of a new [gang] member over the [prison's] E-message system." *See id.* at 7. In other words, Plaintiff's own filings, and disciplinary history indicate that Plaintiff's actions, not the mere fact of social media posts, resulted in his designation as an increased security risk. Nevertheless, the Court will allow this issue to be sorted out in discovery.

Accordingly, the First Amendment retaliation claim will survive, at least for now.

**B. The Fourteenth Amendment Procedural Due Process Claim**

A due process claim does not arise under the Eighth Amendment, which provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S Const. amend. VIII.  However, the Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property." U.S Const. amend. XIV. "Liberty interests protected by the Fourteenth Amendment may arise from two sources -- the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). The standard analysis for a claim of a violation of procedural due process involves two steps: First, the court determines "whether there exists a liberty or property interest of which a person has been deprived." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citation omitted) (*per curiam*). Then, if a person has been deprived of a liberty or property interest, the court determines "whether the procedures followed by the State [in depriving that person of a liberty or property interest] were constitutionally sufficient."  *Id*.

6

The United States Constitution does not create a liberty interest in avoiding transfer to more adverse conditions of confinement. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). But the Second Circuit has held that "[a] state-created liberty interest 'arises when state statutes or regulations require, in language of an unmistakably mandatory character, that a prisoner not suffer a particular deprivation absent specified predicates.'" *Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) (quoting *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999) (internal citations and quotation marks omitted)).

Plaintiff alleges his right to due process was violated under the Eighth and Fourteenth Amendment when prison officials placed him in the SRG unit on December 22, 2023. ECF No. 1 ¶¶ 11, 33.

In Connecticut, Administrative Directive 6.14 governs the procedures for security risk groups. *See* State of Connecticut Department of Correction, Administrative Directive 6.14 ("AD 6.14"). A.D. 6.14 establishes certain mandatory predicates for the designation of inmates as SRG members. *See id.* § 6 (defining "Security Risk Group Member Designation Process."). Plaintiff therefore had a liberty interest in avoiding designation as a SRG member and his related placement in SRG. *See id.* § 6(B)–(C). *See also Velez-Shade v. Population Mgmt.*, No. 3:18-CV-1784 (JCH), 2019 WL 4674767, at *11 (D. Conn. Sept. 25, 2019) (recognizing an inmate's liberty interest in avoiding SRG designation).

If Plaintiff had a liberty interest in avoiding designation as a SRG member, "the procedures followed by the State [must be] constitutionally sufficient." *Swarthout*, 562 U.S. at 219. In *Hewitt*, 459 U.S. 460 (1983), the Supreme Court considered what

7

process should be afforded an inmate who had been placed in administrative

segregation pending an investigation into a disciplinary charge. *Id.* at 474–75. There, it

was appropriate to place an inmate in administrative segregation when necessary to

incapacitate an inmate who "represents a security threat" or to "complet[e] ... an

investigation into misconduct charges."  *Id.* at 476. The Supreme Court held that in

connection with an inmate's placement in administrative segregation, he or she "must

merely receive some notice of the charges against him and an opportunity to present

his views [either orally or in writing] to the prison official charged with deciding whether

to transfer him to administrative segregation." *Id*. In *Wilkinson v. Austin*, 545 U.S. 209,

229 (2005), the Supreme Court applied the standard set forth in *Hewitt* to a due process

claim asserted by inmates who had been classified for indefinite placement in a high

security state prison for safety and security, rather than disciplinary reasons.

    If the placement in administrative segregation is for punitive or disciplinary

reasons, the procedural protections in *Wolff v. McDonnel*, 418 U.S. 539 (1973), apply.

*See Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 n.3 (2d Cir. 2017) (citation

omitted). In *Wolff*, the Supreme Court held that an inmate charged with a disciplinary

violation that may result in the loss of good-time credits is entitled to written notice of the

charges at least twenty-four hours in advance of the hearing, the opportunity to present

witnesses and documentary evidence before an impartial hearing officer or committee

as long as doing so will not jeopardize prison safety and security, and a written

statement including evidence relied on by the hearing officer in reaching his or her

decision and the reasons for the disciplinary action. 418 U.S. at 564–66. An inmate has

no right to retained or appointed counsel at a disciplinary hearing, but in some circumstances may be entitled to the appointment of an advocate or assistance from a fellow inmate. *Id.* at 570.

Assuming that Plaintiff's SRG designation is punitive or disciplinary, Plaintiff does not allege that procedures leading to his placement in the SRG unit were insufficient under *Wolff*. For example, Plaintiff does not allege that he did not receive "written notice of the charges at least twenty-four hours in advance of the hearing." *Wolff*, 418 U.S. at 564. The written notice of the charges against Plaintiff is contained in a disciplinary report attached to his complaint. ECF No. 1 at 7. The disciplinary report provided Plaintiff notice of the offense of "Security Risk Group Affiliation." *Id.* That notice was provided to Plaintiff at 12:05 p.m. on December 22, 2023. *Id.* Plaintiff alleges in his complaint that the "hearing was done well after the 24 hours [he] was issued the D.R. [disciplinary report]." *Id.* ¶ 13.

Rather, Plaintiff alleges that Correctional Officer Lapointe violated his procedural due process rights by issuing him a disciplinary report that lacked a report number or text on the back of it. ECF No. 1 ¶ 9. Plaintiff further alleges that Correctional Officer Rivera was involved in that violation by delivering that allegedly deficient disciplinary report to Plaintiff.  *Id.* ¶ 5. But Plaintiff fails to allege how a lack of report number or text on the back of the report was deficient in placing him on notice of the charges. Even if he could, his claim would still fail.

The "State of Connecticut Department of Correction Administrative Directive 6.14 provides… that an inmate or detainee may be designated as an SRG member *whether*

9

*or not a disciplinary report has been issued* charging the inmate or detainee of SRG affiliation." *Woolard v. Santiago*, No. 3:19CV1256 (VLB), 2020 WL 2079533, at *7 (D. Conn. Apr. 30, 2020) (citing Administrative Directive 6.14(7)(A)&(B)) (emphasis added). Therefore, even if the disciplinary report issued by Lapointe and delivered by Rivera was somehow defective, the disciplinary report issued to Plaintiff exceeded the process he was due under the DOC Administrative Directives.

Further, Plaintiff does not claim that he was not afforded an opportunity to "present witnesses and documentary evidence before an impartial hearing officer or committee," *Wolff*, 418 U.S. at 566, either. Rather, Plaintiff alleges that "[n]o physical evidence was shown to [him] in accordance to A.D. 9.4 and A.D. 9.5." ECF No. 1 ¶ 12. Plaintiff claims "[a]t the hearing, [he] was found guilty. [He] was force[d] to a hearing, shown no evidence against [him], lied on, and found guilty base[d] off arbitrary judgment." *Id.* ¶ 14.

First, the evidence presented at the hearing was presented in accordance with A.D. 9.4 and 9.5. A.D. 9.4(13) provides that "[p]lacement, management and removal of inmates on Security Risk Group status shall be in accordance with Administrative Directive 6.14, Security Risk Groups." A.D. 6.14(7)(B) provides that "[n]o hearing other than the one provided for in Administrative Directive 9.5, Code of Penal Discipline, shall be required when such designation is based on the offense of Security Risk Group Affiliation." A.D. 9.5(16)(h)(v)(3) provides that "[p]hysical evidence shall be presented at the hearing, as determined by the Investigator, whenever practicable," but A.D. 9.5(16)(h)(v)(4) also allows a "written description of the evidence" to be presented.

10

Thus, even if "[n]o physical evidence was shown to [Plaintiff]" at the hearing, ECF No. 1 ¶ 12, officials still conducted the hearing in compliance with A.D. 9.4 and A.D. 9.5 because a written description of the evidence was presented at the hearing. *See id.* at 7 (the disciplinary report describing the written description of the evidence); *id.* at 6 (Washington's denial of Plaintiff's appeal showing that hearing officer relied on that written description of the evidence to make his finding).

Second, even if the evidence relied on by the hearing officer was not presented in accordance with the Administrative Directives, this does not run afoul of *Wolff*. Rather than prescribing the evidence that *a prison* must present, *Wolff* establishes *an inmate*'s right to present evidence on his own behalf. 418 U.S. at 566. That right is codified in A.D. 9.5(16)(e)(i)(1), which provides that "[a]n accused inmate shall have an opportunity to present witness testimony at a disciplinary hearing." Plaintiff does not allege that he was deprived of that right.

Finally, Plaintiff does not allege that he was not provided "a written statement including evidence relied on by the hearing officer in reaching his or her decision and the reasons for the disciplinary action." *Wolff*, 418 U.S. at 564. Plaintiff provided this written statement with his Complaint. ECF No. 1 at 7. The written statement shows that Plaintiff was served with it at 12:05 p.m. on December 22, 2023.  *Id.* Plaintiff acknowledges receiving the written statement in his Complaint. *Id.* ¶ 9.

The written statement indicates that Officer LaPointe investigated Plaintiff for possible SRG affiliation and concluded that he was a member of the Fruit Town Brims (SRG-Bloods). ECF No. 1 at 7. The investigation revealed that Plaintiff sent E-

messages using "numerous SRG identifiers and terminology pertaining to the Brims to confirm his affiliation and clarify how he has been recruiting for his specific set." *Id.* These E-messages directed recipients "to post photos and content on his public social media account, which included multiple Brim (SRG-Bloods) related items such as 'Brim, Brimavelly, Big-Bro, on my Brim, Brims don't breed bums, etc.' and photos of him openly displaying 'Brim' identifying hand-signs and opening 'flagging' (wearing a red-bandana) with the color red to show his affiliation." *Id.*

The report concluded that "openly discussing the recruitment of a new member over the E-message system clearly shows his current affiliation with the Security Risk Group and jeopardizes the security and order of the facility. His actions are a direct violation of A.D. 9.5." ECF No. 1 at 7. The disciplinary report provides ample notice of "evidence relied on by the hearing officer in reaching his or her decision and the reasons for the disciplinary action." *Wolff*, 418 U.S. at 564. Plaintiff's Complaint and its attachments show the procedural due process that Plaintiff received leading up to, and at, his hearing was constitutionally sufficient under *Wolff*.

Plaintiff alleges in his Complaint that he appealed his disciplinary finding on January 26, 2024. ECF No. 1 ¶ 29. Plaintiff maintains that defendant Craig Washington denied his appeal. *Id.* "Courts within this Circuit are split as to whether a prison official who simply denies an inmate's administrative appeal from a disciplinary hearing can be held liable under § 1983." *Ortiz v. Russo*, No. 13 CIV. 5317 ER, 2015 WL 1427247, at *13 (S.D.N.Y. Mar. 27, 2015) (citations omitted). "Some courts have held that an appeal officer may be held liable for failure to correct procedural due process violations that

occurred at the disciplinary hearing below," *Jackson v. Annucci*, No. 20-CV-02008

(PMH), 2021 WL 2581340, at *6 (S.D.N.Y. June 23, 2021) (citing *Lebron v. Mrzyglod*,

No. 14-CV-10290, 2017 WL 365493, at *9 (S.D.N.Y. Jan. 24, 2017); *Colon v. Annucci*,

344 F. Supp. 3d 612, 631 (S.D.N.Y. 2018); *McGriff v. Keyser*, No. 17-CV-7307, 2019

WL 6033421, at *8-9 (S.D.N.Y. Nov. 13, 2019)), "while others have held that 'a prison

official who denies an inmate's administrative appeal from a disciplinary hearing can be

held liable under § 1983 only if the violation complained of was still "ongoing" at the time

of the appeal, such that he or she could have remedied the violation directly.'"  *Jackson*,

2021 WL 2581340, at *6 (citing *Jamison v.* Fischer, No. 11 CIV. 4697 RJS, 2012 WL

4767173, at *4 (S.D.N.Y. Sept. 27, 2012); *Ortiz*, 2015 WL 1427247, at *14; *Koehl v.*

*Bernstein*, No. 10-CV-3808, 2011 WL 2436817, at *10 (S.D.N.Y. June 17, 2011)).

Here, there was no procedural due process violation for Washington to correct.

Even if there was, as other courts in this Circuit have found, "the split in guidance

entitles [Washington] to qualified immunity." *Jackson*, No. 20-CV-02008 (PMH), 2021

WL 2581340, at *6 (S.D.N.Y. June 23, 2021) (citing *Colon*, 344 F. Supp. 3d at 631

("Venettozzi is entitled to qualified immunity for his affirmance of [p]laintiff's Tier III

Hearing disposition.")); *see also McGriff v. Keyser*, No. 17-CV-7307, 2019 WL 6033421,

at *9 (S.D.N.Y. Nov. 13, 2019) (same); *Lebron*, 2017 WL 365493, at *9 (finding that

"qualified immunity attaches" because "not every reasonable official would understand

that" "failure to correct a procedural due process violation on appeal violates an

inmate's constitutional rights").

13

Plaintiff also alleges that he spoke to Papoosha after Washington denied his appeal. ECF No. 1 ¶ 30. Papoosha told Plaintiff, "'you['re] guilty, gotta do what [I] gotta do to keep this program alive[ ].'" *Id.* Papoosha then laughed. *Id.* Plaintiff does not allege how Papoosha's statement violated his right to due process or any other right. This statement, which might be construed as callous, is not an actionable constitutional violation. *See*, *e.g.*, *Liner v. Ward*, 754 F.Supp. 32, 34 (S.D.N.Y. 1991) (citation omitted) ("[A]llegations of rude, inconsiderate and insulting language by a police officer ... do not give rise to a constitutional violation.").

Accordingly, because Plaintiff has failed to state a Fourteenth Amendment procedural due process claim against Defendants, this claim will be dismissed.

### C.    The Eighth Amendment claim for cruel and unusual punishment relating to Plaintiff's confinement in the SRG unit.

To succeed on an Eighth Amendment claim, a plaintiff "must show (1) a deprivation that is objectively, sufficiently serious ... and (2) a sufficiently culpable state of mind on the part of the defendant official." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (internal quotation marks omitted). The deprivations must be examined in light of contemporary standards of decency to determine whether they are sufficiently serious. *See Helling v. McKinney*, 509 U.S. 25, 35–36 (1993); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Subjectively, the plaintiff must show that the defendants "know[ ] that inmates face a substantial risk of serious harm and disregard[ ] that risk." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

14

Plaintiff alleges an Eighth Amendment cruel and unusual punishment claim related to his confinement in the SRG unit.  ECF No. 1 ¶ 32.  A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when the official's action involves the "unnecessary and wanton infliction of pain."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).

While in the SRG unit, Plaintiff was limited to three phone calls per week and was not allowed electronics or E-messages. ECF No. 1 ¶ 20. Plaintiff was not allowed to spend over $60 at the commissary, he was separated from the general population, received no treatment, and could not attend religious services. *Id.* ¶ 21. Plaintiff also contends he was given "[n]o proper medical and mental health treatment," *id.* ¶ 22, and had no access to the law library or Legal Aid. *Id.* ¶ 23. Plaintiff had to forfeit early release credits, *id.* ¶ 24, and was not allowed to participate in educational programming. *Id.* ¶ 25. Plaintiff was also locked in his unit all day and was not given proper cleaning supplies. *Id.* ¶ 26.

Plaintiff has not alleged that "the[se] conditions, either alone or in combination, pose an unreasonable risk of serious damage to [an inmate's] health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citing *Rhodes*, 452 U.S. at 347). "Prisoners have no right to be housed in comfortable surroundings." *Mercado v. Dep't of Corr.*, No. 16-cv-1622 (VLB), 2017 WL 1095023, at *6 (D. Conn. Mar. 23, 2017) (finding no Eighth Amendment violation where Plaintiff complained about twenty-hours of confinement per day at MacDougall-Walker Correctional Institution). The Supreme Court has held that

15

restrictions do not violate the Eighth Amendment proscription against cruel and unusual

punishment unless they are "totally without penological justification," "grossly

disproportionate," or "involve the unnecessary and wanton infliction of pain." *Rhodes*,

452 U.S. at 346 (quotations omitted). "To the extent that such conditions are restrictive

or even harsh, they are part of the penalty that criminal offenders pay for their offenses

against society." *Id.* at 347.

A prisoner's conditions of confinement claim must meet "minimal civilized

measures of life's necessities," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), but Plaintiff

does not allege that prison officials deprived him of his "basic human needs—*e.g.*, food,

clothing, shelter, medical care, and reasonable safety" while in the SRG unit.

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *see also*

*Jackson v. Heer*, 322 F. Supp. 3d 406, 412 (W.D.N.Y. 2018) (finding alleged "adverse

conditions," including "confinement to his cell for 23 hours a day [and] loss of visitation

and telephone privileges" in the restrictive housing unit, were not sufficiently severe to

meet the objective prong of the Eighth Amendment standard).

Accordingly, because Plaintiff has not alleged an objectively serious deprivation

while in the SRG unit, his Plaintiff's Eighth Amendment cruel and unusual punishment

claim will be dismissed.

**D.    The Eighth Amendment claim for deliberate indifference relating to Plaintiff's confinement in the SRG unit.**

Plaintiff last alleges Defendants violated his rights under the Eighth and

Fourteenth Amendment for deliberate indifference to his mental and physical health and

16

safety. ECF No. 1 ¶ 35. Because Plaintiff is a sentenced inmate, his deliberate

indifference claim is analyzed under the Eighth Amendment rather than the Fourteenth

Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (recognizing that

deliberate indifference claims of sentenced inmates are considered under the Eighth

Amendment while deliberate indifference claims of pretrial detainees are considered

under the Fourteenth Amendment).

### a. Deliberate indifference to mental and physical health

"In order to establish an Eighth Amendment claim arising out of inadequate

medical care, a prisoner must prove 'deliberate indifference to [his] serious medical

needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976)). As with all Eighth Amendment claims, a claim for

deliberate indifference to medical needs has both an objective and subjective

component. The objective component requires the plaintiff to demonstrate that he had a

sufficiently serious "medical need," in other words, a "'*serious* illness or injury' resulting

in the infliction of unnecessary pain and suffering." *Smith v. Carpenter*, 316 F.3d 178,

183–84 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 105) (emphasis original). For the

subjective element, a plaintiff must show that the prison official's actions were more

than "an inadvertent failure to provide adequate medical care." *Id.* at 184 (citing *Estelle*,

429 U.S. at 105–06). Deliberate indifference can be demonstrated when prison officials

"intentionally deny[ ] or delay[ ] access to medical care or intentionally interfer[e] with the

treatment once prescribed." *Estelle*, 429 U.S. at 104–05.

Plaintiff has not alleged in his Complaint that he had a "serious medical need" to establish the objective component of the test.

Accordingly, he has not established that defendants were deliberate indifferent to his mental and physical health while in the SRG unit, and any Eighth Amendment deliberate indifference claim arising out of these allegations will be dismissed.

### b. Deliberate indifference to safety

To state an Eighth Amendment claim for deliberate indifference to safety, Plaintiff must show that he was confined under conditions that posed a substantial risk of serious harm and that the defendants both knew that he faced a substantial risk of serious harm and failed to take reasonable actions to abate or avert the harm. *See Lewis v. Swicki*, 629 F. App'x 77, 79 (2d Cir. 2015) (summary order) (citing *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)). There is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *See Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *i.e.*, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). The defendant's actions must be more than merely negligent. *See Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012).

Plaintiff has alleged that privileges available to the general population were unavailable to him while in the SRG unit, ECF No. 1 ¶¶ 20–26, but Plaintiff has not

18

alleged this deprivation of common privileges "posed a substantial risk of serious harm and that the defendants both knew that he faced a substantial risk of serious harm and failed to take reasonable actions to abate or avert the harm." *Lewis*, 629 F. App'x at 79. Plaintiff has therefore failed to allege a claim for deliberate indifference to his safety.

Accordingly, because Plaintiff has failed to allege defendants violated his rights under the Eighth Amendment for deliberate indifference to his mental and physical health and safety, this claim will be dismissed.

## III.    ORDERS

For the above reasons, only Plaintiff's First Amendment retaliation claim survives initial review.

All of the Complaint's other claims are **DISMISSED** without prejudice.

Any proposed Amended Complaint must be filed by **January 17, 2025.** If a proposed Amended Complaint is not filed by **January 17, 2025**, this case will proceed on only the First Amendment retaliation claim, and the appropriate scheduling order for that claim only will be issued by the Court.


SO ORDERED at New Haven, Connecticut, this  6th day of December, 2024.

 /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge