UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHRISTON MITCHELL,            :      Case No. 3:24-CV-864 (SFR)
      *Plaintiff,*             :
                                :
      v.                      :
                                :
WASHINGTON, *et al.*,          :
      *Defendants.*         :

## <u>INITIAL REVIEW ORDER</u>

*Pro se* plaintiff Christon Mitchell, an individual currently serving a sentence of incarceration in the custody of the Connecticut Department of Correction ("DOC") at Cheshire Correctional Institution ("Cheshire"),[1] filed this action pursuant to 42 U.S.C. § 1983.

In his initial Complaint, Mitchell asserted that he suffered several constitutional violations while housed at Cheshire; as Defendants, he named four DOC employees: District Administrator Craig Washington, Security Risk Group ("SRG")[2] Coordinator Papoosha, and Cheshire Correctional Officers Lapointe and Rivera. Compl., ECF No. 1. Specifically,

---

[1] Plaintiff was sentenced on November 9, 2023 and he is currently incarcerated at Cheshire. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=347427 (last visited July 7, 2025). I take judicial notice of these matters of public record. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

[2] According to the Connecticut DOC website, the "Security Risk Group/Gang Management Unit is responsible for proactively collecting, evaluating and disseminating security related gang intelligence on the 13 designated Security Risk Groups that exist among the offender population." Connecticut State Department of Correction, Security Risk Group/Gang Management Unit, https://portal.ct.gov/doc/org/security-risk-groups-unit (last visited July 7, 2025). As above, I take judicial notice of the DOC's website. *See Simms v. Cuzio*, No. 3:21CV00492 (SALM), 2022 WL 3107150, at *5 n.3 (D. Conn. Aug. 4, 2022).

Mitchell asserted Defendants violated his rights under the First Amendment, the Fourteenth Amendment's Procedural Due Process Clause, and the Eighth Amendment. *Id.* Mitchell requested both damages and injunctive relief. *Id.*

On initial review, the Court permitted Mitchell to proceed on his First Amendment claim but dismissed his remaining claims without prejudice to his filing an amended complaint. Initial Review Order ("IRO"), ECF No. 14; *see also* Order, ECF No. 22.

On February 27, 2025, Mitchell filed his Amended Complaint against the same Defendants—District Administrator Washington, SRG Coordinator Papoosha, and Cheshire Correctional Officers Lapointe and Rivera—along with three new Defendants: Disciplinary Hearing Officer ("DHO") John Doe, MacDougall-Walker Correctional Institution ("MWCI") Warden Guadarrama,[3] and Corrigan-Radgowski Correctional Center ("Corrigan") Warden Dougherty. *See* Am. Compl., ECF No. 24. He again brings claims under the First, Fourteenth, and Eighth Amendments and seeks damages and injunctive relief. *Id.* at 16.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

---

[3] Although Mitchell's Amended Complaint refers to the MWCI Warden as Guardarama, I take judicial notice that the correct spelling is Guadarrama. *See* Connecticut State Department of Correction, MacDougall-Walker Correctional Institution, https://portal.ct.gov/doc/facility/macdougall-walker-ci (last visited July 7, 2025).

I have thoroughly reviewed all factual allegations in the Amended Complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[4]

## I.    FACTUAL BACKGROUND

I summarize Mitchell's factual allegations only to give context to my rulings below. Mitchell was housed at Cheshire on December 22, 2023. Am. Compl. ¶ 11. On that date, Correction Officer Lapointe wrote and issued the disciplinary report charging Mitchell with SRG affiliation. *Id.* ¶¶ 11, 29, p. 17.[5] Correctional Officer Rivera served him with that disciplinary report charging him with SRG affiliation. *Id.* ¶¶ 11, 12. Mitchell has attached a copy of the disciplinary report, which states:

> Through the review of E-messages authored by [Mitchell], it was found that he used numerous SRG identifiers and terminology pertaining to the Brims to confirm his affiliation and clarify how he has been recruiting for his specific set. [Mitchell] also sent E-messages directing recipients, to post photos and content on his public social media account, which included multiple Brim (SRG-Blood) related terms . . . and photos of him openly displaying "Brim" identifying hand-signs and openly "flagging" . . . to show his affiliation.

---

[4] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

[5] Citations to the complaint are by paragraph number, where applicable, and otherwise refer to the page numbers imprinted by the electronic case filing system on the header of the document.

*Id.* at p. 17.

Mitchell contends that under the DOC Administrative Directives, the disciplinary report should have had text on the back of the report to provide him with several options: (1) sign a waiver of the twenty-four hour notice of hearing; (2) sign a "waiver of appearance" for his disciplinary hearing; (3) sign a guilty plea for the disciplinary charges that would bar an appeal; and (4) sign a "Deferral of Prosecution." *Id.* ¶ 11. In this instance, Mitchell was not afforded any of these options provided to other individuals because the back side of his disciplinary report was blank. *Id.* In addition, the DOC Administrative Directives require that a disciplinary report have a so-called "Report Number," which enables individuals to refer to the report in a grievance or appeal. *Id.* ¶ 14. The disciplinary report issued to Mitchell had no such Report Number. *Id.*

Mitchell asserts that he was subjected to a strip-search and then sent to the restrictive housing unit ("RHU"). *Id.* ¶ 13 (date of strip-search unclear). Defendant Lapointe was the officer who made the decision to transfer Mitchell to administrative segregation due to the disciplinary charges. *Id.* ¶ 12. But Mitchell was not able to speak with Lapointe or write to him about the charges made in the disciplinary report because Defendant Rivera brought the ticket to him. *Id.*

On December 27, 2023, Mitchell was afforded a hearing on the disciplinary charge of SRG affiliation. *Id.* ¶ 15; p. 21. Defendant DHO Doe adjudged Mitchell guilty of the charges due to his social media postings, including pictures, and his professional registered and licensed artist name. *Id.* ¶¶ 15-16, 32. Mitchell claims that correctional officials accessed his social media account upon his intake to DOC in 2021, but some of the messages used as evidence of his efforts to recruit gang members were allegedly from 2023. *Id.* ¶ 17. Mitchell

was never able to review these messages to present his defense. *Id.* ¶¶ 18-19. He claims that Defendant DHO Doe stated that he did not have to show him anything and failed to explain why evidence was redacted. *Id.* ¶ 32.

Mitchell appealed the disciplinary finding to Defendant District Administrator Craig Washington, who allegedly denied his appeal. *Id.* ¶ 31.

Mitchell was placed in the Phase 2 SRG unit, where he could have no more than three phone calls per week, had only limited commissary, had no religious services for fellowship and communion, lacked proper mental health treatment, and had no access to electronics, e-mails, or the law library. *Id.* ¶ 21. Mitchell states that he has had a severe "mental health diagnosis for years." *Id.* ¶ 27.

Individuals in the SRG unit allegedly are forced to forfeit good-time credit and forgo early release programs. *Id.* ¶ 22. They are also allegedly ineligible to continue their education through the Pell program. *Id.* Mitchell says he spoke to Defendant SRG Coordinator Papoosha, but Defendant Papoosha responded by laughing, telling Mitchell that he was guilty, and mocking the horrible treatment of Mitchell during his hearing. *Id.* ¶ 23. Defendant Papoosha also stated: "I gotta do what I gotta do to keep this SRG Program alive." *Id.*

In the SRG Program, Mitchell must remain free of disciplinary tickets for a full year. *Id.* ¶ 24. He asserts that he had no disciplinary charges while housed in the general population. *Id.* But Corrigan correctional staff in the SRG Unit allegedly place people housed in the Unit in danger by moving them close to other rival SRG individuals. *Id.* Mitchell claims that correctional staff intentionally cause people to fight in the SRG unit. *Id.* Mitchell spoke to Defendant Corrigan Warden Dougherty and explained that he was denied due process in connection with his SRG affiliation. *Id.* ¶ 33. Defendant Dougherty walked away laughing. *Id.*

On November 14, 2024, Mitchell states he was minding his own business when a fight broke out. *Id.* ¶ 25. After he was hit, he attempted to defend himself and received a disciplinary report for fighting. *Id.* As a result, Mitchell had to restart the SRG Program at Phase 1. *Id.*

In Phase 1, Mitchell was jumped by other affiliated SRG individuals on December 11, 2024 and again on December 20, 2024, and received two more disciplinary reports for fighting. *Id.* He was later determined to be not guilty of the third charge. *Id.* Mitchell claims that correctional staff "start wars" between SRG individuals to keep the SRG Program open. *Id.*

Mitchell asserts that Defendant MWCI Warden Guadarrama is responsible for permitting him to held in the harsh conditions of the MWCI SRG Unit. *Id.* ¶ 34. Mitchell indicates that he is not provided with four hours of recreation a day, is receiving limited showering opportunities, and is put in a small cage where he cannot work out for at least an hour. *Id.*

## II.    DISCUSSION

Section 1983 of Title 42 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

A plaintiff seeking monetary damages from a defendant must submit facts that establish the personal involvement of that defendant in the claimed constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)). This is true with respect to supervisory officials as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (holding that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983, and adding that "it is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had").

With this in mind, I first review whether Mitchell has claimed any plausible constitutional violations under § 1983 against any defendant in his or her individual capacity. I construe Mitchell's Amended Complaint most broadly to raise concerns about violations of his rights under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.[6]

## A. First Amendment

The prior initial review order noted that Mitchell's Complaint suggested that "Plaintiff's actions . . . resulted in his designation as an increased security risk" and his First

---

[6] I address whether Mr. Mitchell raises plausible claims under the Fourth Amendment and the Fourteenth Amendment Equal Protection Clause, even though he does not specifically mention these claims. *See* Am. Compl. 16.

Amendment retaliation claim could proceed for further development of the record. *See* IRO at 6.

Because Mitchell's Amended Complaint submits essentially the same facts as his original Complaint, I will not revisit this claim that is now proceeding in this action. At this juncture, however, I clarify that Mitchell may proceed on his First Amendment retaliation claims for individual capacity relief against Defendants Officer Lapointe, Officer Rivera, DHO Doe, SRG Coordinator Papoosha, and District Administrator Washington, all of whom Mitchell plausibly alleges had some involvement in his SRG affiliation. *See Wright,* 21 F.3d at 501.

### B. Fourteenth Amendment Procedural Due Process

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). To state a claim for violation of his right to procedural due process, Mitchell must submit facts showing that he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law. *See Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (citing *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)). The Due Process Clause, standing alone, generally does not create a protected liberty interest in conditions of confinement if the conditions are "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (finding no protected liberty interest in freedom from intrastate prison transfer, even to a maximum-security facility, because prison officials have discretion to transfer prisoners among correctional facilities "for whatever reason or for no reason at all"). However, there are circumstances under which a state statute,

policy, or regulation can create a protected liberty interest relating to conditions of confinement. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

In *Sandin*, the Supreme Court held that a liberty interest warranting due process protection "will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. Thus, to assess Mitchell's claim, I must determine whether Mitchell's confinement in the SRG Program constitutes an atypical and significant hardship.

In *Sandin*, the Supreme Court held that confinement in the restrictive housing unit for thirty days for disciplinary reasons did not implicate a constitutionally protected liberty interest. *Id*. at 485-86. Moreover, in *Palmer v. Richards*, the Second Circuit expanded on what constitutes an "atypical and significant hardship" by instructing courts to consider "[b]oth the conditions [of confinement] and their duration . . . harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." 364 F.3d 60, 64 (2d Cir. 2004) (citation omitted). There is no bright line rule declaring that a specific period of segregated confinement "automatically fails to implicate due process rights." *Id*. However, the Second Circuit has noted that where a "detailed factual record" was absent, the court has "affirmed dismissal of due process claims only in cases where the period of time spent in [restrictive housing] was exceedingly short"—less than 30 days—"and there was no indication that the plaintiff endured unusual [restrictive housing] conditions." *Velez-Shade v. Population Mgmt.*, No. 3:18CV1784 (JCH), 2019 WL 4674767, at *10 (D. Conn. Sept. 25, 2019) (alternation in original) (quoting *Palmer*, 264 F.3d at 65-66.)

Mitchell's Amended Complaint indicates that he has been confined in harsh conditions of the SRG Program for more than a year. Accordingly, for purposes of initial review, I consider Mitchell's claims sufficient to demonstrate an "atypical and significant hardship," thereby establishing a liberty interest in his SRG proceeding and classification. *Calhoun v. Quiros*, No. 3:23-CV-00715 (SVN), 2023 WL 8618745, at *9 (D. Conn. Dec. 13, 2023); *see also Velez-*, 2019 WL 4674767, at *11 (analyzing DOC directives and recognizing liberty interest in SRG classification).

The level of procedural protection required depends on the purpose of the hearing. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). For an administrative segregation proceeding, an incarcerated individual is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).[7] To satisfy due process, "the non-adversary proceeding [must occur] 'within a reasonable time following the inmate's transfer' to administrative segregation, 'and the decisionmaker reviews the charges and then-available evidence against the [inmate].'" *Jusino v. Rinaldi*, No. 3:18cv2004 (MPS), 2019 WL 2720763, at *6 (D. Conn. June 27, 2019) (quoting *Hewitt*, 459 U.S. at 476 n.8).

For a disciplinary proceeding, an incarcerated individual is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense. *See Wolff v. McDonnell*, 418 U.S. 539, 561-70 (1974). The Second Circuit has

---

[7] In *Wilkinson v. Austin*, 545 U.S. 209, 229 (2005), the Supreme Court applied the standard set forth in *Hewitt* to a due process claim asserted by individuals who had been classified for indefinite placement in a high security state prison for safety and security, rather than disciplinary reasons.

also explained that a disciplinary determination must be supported by some "reliable evidence" of guilt. *Elder v. McCarthy*, 967 F.3d 113, 129 (2d Cir. 2020) (quoting *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004)).

### 1. Process for RHU Placement on December 22, 2023

To start, Mitchell contends that that he was placed in segregation pending his disciplinary hearing in violation of his procedural due process rights.

Mitchell maintains that his disciplinary report did not comply with the prison directives. But a prison official's failure to comply with the requirements in a prison directive is not alone sufficient to state a violation of Mitchell's constitutional procedural due process rights. *See Bibiloni v. Doe*, No. 24-CV-1583 (VDO), 2024 WL 4744662, at *5 (D. Conn. Nov. 12, 2024) (stating that complaint about failure to comply with prison directives did not support a claim of Fourteenth Amendment procedural due process violation); *Jackson v. Boucaud,* No. 9:08-CV-1373 (TJM/DEP), 2009 WL 6066799, at *8 (N.D.N.Y. Dec. 31, 2009) (stating that failure to follow prison directive insufficient to state claim for denial of substantive or procedural due process).

Mitchell states that he was deprived of an opportunity to present his views before being placed in segregation because Defendant Rivera delivered his disciplinary report rather than Defendant Lapointe, who made the administrative decision to place him in segregation pending his disciplinary hearing. However, it is apparent from the documents attached to Mitchell's Amended Complaint that his hearing on the SRG affiliation charge occurred on December 27, 2023—five days after the disciplinary ticket was issued. Because Mitchell was in segregation for only five days before his disciplinary hearing, absent allegations of unusual conditions, the Due Process Clause did not require a separate process prior to the hearing that he received. *See*

*Sandin*, 515 U.S. at 486 (holding that confinement in the restrictive housing unit for thirty days for disciplinary reasons did not implicate a constitutionally protected liberty interest).

Accordingly, Mitchell's Amended Complaint fails to suggest any plausible Fourteenth Amendment Due Process Claim against Defendant Lapointe in connection with his initial segregation prior to his hearing.

2.  Process for SRG Affiliation Hearing

Additionally, because Mitchell was charged in a disciplinary report for the disciplinary offense of SRG affiliation, I next consider whether Mitchell was afforded the procedures required under *Wolff* prior to the SRG affiliation determination.

Mitchell alleges that he was not permitted to review the evidence so that he could present a defense. In particular, he states that he was not permitted to see the messages and postings that purportedly formed the basis for the SRG disciplinary report. At this early stage of the litigation, Mitchell's Amended Complaint suggests a procedural due process violation based on failure to afford him adequate notice of the alleged misconduct, disclosure of the specific evidence against him, and an opportunity to present his defense as required under *Wolff*. *See Elder*, 967 F.3d at 129 ("[O]ur precedents have taken a functional approach to assessing the adequacy of notice in this context: we have held that notice is constitutionally adequate when it is sufficiently specific as to the misconduct with which the inmate is charged to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges and not be made to explain away vague charges set out in a misbehavior report.") (internal quotation marks omitted); *Sira v. Morton*, 380 F.3d 57, 74 (2d Cir. 2004) ("An inmate's due process right to know the evidence upon which a discipline ruling is based is well established. Such disclosure affords the inmate a reasonable opportunity to explain his actions

and to alert officials to possible defects in the evidence."). Accordingly, I will permit Mitchell to proceed on a procedural due process claim against Defendants DHO Doe and District Administrator Washington in their individual capacities.[8]

### 3. Sufficiency of Evidence

Decisions to place an individual in administrative or punitive segregation must be "supported by some evidence in the record." *Brown v. Semple*, No. 3:16CV376 (MPS), 2018 WL 4308564, at *12 (D. Conn. Sept. 10, 2018) (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (procedural due process requires that decision in connection with prison disciplinary hearing be "supported by some evidence in the record").

Here, Mitchell claims that he did not have an adequate opportunity to review the evidence used to determine his guilt and present a defense. These contentions suggest that the administrative and disciplinary determinations may not have satisfied the reliable evidence standard under *Elder*. 967 F.3d at 129. Accordingly, Mitchell may also proceed on his claims of Fourteenth Amendment procedural due process violations for insufficient evidence against Defendants Officer Lapointe, DHO Doe, and District Administrator Washington in their individual capacities.

### C. Fourteenth Amendment Equal Protection Clause

Mitchell additionally maintains that he was treated differently from other individuals when he was served with a disciplinary report that did not enable him to consider certain options afforded under the DOC administrative directives. Thus, I consider whether he has pleaded a plausible Fourteenth Amendment equal protection violation.

---

[8] Mitchell's attached Disciplinary Process Summary Report indicates that Lieutenant Czeremcha served as the DHO for his SRG affiliation charges. Am. Compl., p. 23.

When a suspect classification is at issue, to succeed on an equal protection claim, a plaintiff must submit facts showing that: (1) he or she was treated differently from similarly situated individuals; and (2) that the discriminatory or different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). A plaintiff must demonstrate evidence of "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).

When a suspect classification is not at issue, the Equal Protection Clause still requires that individuals not be treated differently from other "similarly situated individuals." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012). Thus, Mitchell may bring a "class of one" equal protection claim if he "alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and the comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

Neither sentenced individuals nor pretrial detainees are members of a protected or suspect class. *Gonzalez v. Hannah*, No. 3:19CV1522(VLB), 2020 WL 3256869, at *8 (D. Conn. June 16, 2020). And Mitchell has pointed to no facts suggesting that he was subject to disparate treatment from comparators due to any "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel*, 232 F.3d at 103. Finally, Mitchell has not pleaded facts to suggest that he was discriminated against as a "class of one" based on intentional disparate treatment from comparators without a rational basis for the difference in treatment. *Olech*, 528 U.S. at 564. In fact, he provides no allegations to support a claim that he was treated differently from any other specific inmate or comparator.

Accordingly, Mitchell's Amended Complaint fails to suggest any plausible Fourteenth Amendment equal protection violation.

### D.  Eighth Amendment[9]

Mitchell also brings an Eighth Amendment claim. In the context of a prisoner's conditions of confinement, those conditions that are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). But while the Constitution does not require "comfortable" prison conditions, it does not permit prison

---

[9] Mitchell appears to assert a claim of Fourteenth Amendment deliberate indifference. *See* Am. Compl. ¶ 38. The Eighth Amendment governs Mitchell's claims of indifference to his conditions of confinement, *see Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017), and "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of [Fourteenth Amendment] substantive due process, must be the guide for analyzing these claims," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Accordingly, Mitchell's Fourteenth Amendment deliberate indifference claim must be dismissed.

officials to maintain conditions that inflict "unnecessary and wanton pain" or result in the "serious deprivation of basic human needs" or the "minimal civilized measure of life's necessities." *Id.* at 347, 349.

A successful claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement requires an individual to demonstrate both an objective and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To meet the objective element, the individual must submit that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Id.*; *Rhodes*, 452 U.S. at 347. The Supreme Court has identified the following basic human needs or life necessities of an incarcerated individual: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348.

To meet the subjective element, an individual must show that the defendants possessed culpable intent; that is, they knew that he faced a substantial risk to his health or safety and yet they disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the individual contend that the defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

For a deliberate indifference to medical needs claim, a prisoner must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2)

subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin* 467 F.3d at 279-80). The Second Circuit has identified several non-exhaustive factors relevant to the inquiry into the seriousness of a medical condition: "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted).

Mitchell asserts that his SRG placement subjects him to limitations on his telephone calls, showers, commissary spending, congregate religious services,[10] access to the law library,[11] electronics, and his eligibility for credits and release before the end of his sentence. But the restrictions that Mitchell cites do not amount to serious deprivations of basic human

---

[10] To the extent Mitchell claims a religious deprivation under the First Amendment, Mitchell has not alleged any facts about his sincerely held religious beliefs. *See Kravitz v. Purcell*, 87 F.4th 111, 128 (2d Cir. 2023) (recognizing that "[t]o assess a First Amendment free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice infringes upon the religious belief; and (3) whether the challenged practice . . . furthers legitimate penological objective[s].").

[11] Nor has Mitchell alleged facts to support a claim that his inability to access the law library resulted in a denial of his right of access to the courts. For such a deprivation, an incarcerated individual is required to demonstrate that he suffered an actual injury as a result of the conduct of the defendants. *See Lewis v. Casey*, 518 U.S. 343, 351-53 (1996). To establish an actual injury, an individual must allege facts showing that the defendant took or was responsible for actions that hindered his efforts to pursue a "nonfrivolous" legal claim. *Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002) ("Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost . . . plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim" that he sought to pursue or seeks to pursue in court) (citation omitted); *see Lewis*, 518 U.S. at 353 (suggesting that the injury requirement of an access to courts claim is satisfied if an "inmate could demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.") (footnotes omitted). No allegations in the Amended Complaint support such a claim.

needs under the law. *See, e.g.*, *Trimmier v. Cook*, No. 3:20-CV-396 (KAD), 2020 WL 5231300, at *5 (D. Conn. Sept. 2, 2020) ("The conditions that [the plaintiff] claims to have been exposed to during his confinement in the SRG program . . . limited daily telephone calls and recreation, restrictions on commissary spending . . . , visits only with family members, lack of access to a law library and a toilet brush and ineligibility for good time credit, parole release, halfway house placement, transitional supervision and vocational or educational programs . . . do not constitute deprivations of [the plaintiff's] basic human needs, such as food, clothing, shelter, medical care or safety."); *Doyle v. Santiago*, No. 3:19-CV-901 (MPS), 2019 WL 5298147, at *8 (D. Conn. Oct. 18, 2019) ("Although the conditions described may be harsh, they do not deprive the plaintiff of any basic human need and, therefore, are not unconstitutional.").

To the extent that Mitchell did suffer from objectively serious deprivations such as the risk of being attacked by other individuals, lack of adequate mental health treatment, or inability to exercise or shower while in the SRG Program, *see* Am. Compl. at ¶¶ 21, 24, 25, 34, Mitchell has not alleged facts to support a claim that any named Defendant was aware of and yet ignored his substantial risk of serious harm while housed in the SRG Program, *see Tangreti*, 983 at 618-19 (stating deliberate indifference "means the official must 'know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference'").

Accordingly, Mitchell has failed to plead facts sufficient to support an Eighth Amendment claim.

### E.  Supervisory Liability

Mitchell claims that Defendant Corrigan Warden Dougherty is liable for Mitchell being held in Phase 2 of the SRG Program in violation of his procedural due process rights. Am. Compl. ¶ 33. He also asserts that Defendant MWCI Warden Guadarrama is responsible for holding him "in SRG in harsh punishment under his overall watch of his designated prison." *Id.* ¶ 34.

The Second Circuit has confirmed that "there is no special rule for supervisory liability." *Tangreti*, 983 F.3d at 618. "Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' . . . . The violation must be established against the supervisory official *directly*." *Id.* (emphasis added) (quoting *Iqbal*, 556 U.S. at 676). Thus, in order to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Id.* at 620.

Mitchell's allegation that he advised Defendant Dougherty about his due process violation is insufficient to impose liability for a constitutional violation. *See Crenshaw v. Edmond*, No. 3:24-CV-372 (OAW), 2024 WL 2746868, at *4 (D. Conn. May 29, 2024) (stating that allegation about Lieutenant's failure to correct the situation after it was brought to her attention did not support cognizable claim for supervisory liability); *see also Tangreti*, 983 F.3d at 616-17 ("A supervisor's 'mere knowledge . . .' is not sufficient because that knowledge does not 'amount[] to the supervisor's violating the Constitution.'") (citation omitted). Nor has Mitchell submitted facts to reflect that Defendant Dougherty was personally involved in any claimed procedural due process deprivations in connection to the

administrative detention or determination of SRG affiliation. Finally, Mitchell has not alleged

facts to suggest Defendant Guadarrama's personal involvement in any deliberate indifference

to his risk of harm while housed at MWCI in the SRG Phase 1 Program. Accordingly, claims

against Defendants Dougherty and Guadarrama in their individual capacity are dismissed.

### F.  Fourth Amendment

Mitchell next claims a Fourth Amendment violation. The Fourth Amendment

guarantees that all people shall be "secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures." U.S. Const. amend. IV.  A person has a constitutionally

protected reasonable expectation of privacy when they have both a subjective expectation of

privacy and that expectation is one that society recognizes as reasonable. *See Katz v. United

States,* 389 U.S. 347 (1967) (Harlan, J. concurring).

#### 1.  Strip Searches

Mitchell maintains that he was subjected to a strip search prior to his placement in the

RHU. Although the Fourth Amendment proscription against unreasonable searches does not

apply within the confines of the prison cell, *Hudson v. Palmer*, 468 U.S. 517, 526 (1984),

"inmates retain a limited right to bodily privacy under the Fourth Amendment," *Harris v.

Miller*, 818 F.3d 49, 57 (2d Cir. 2016). In considering this claim, I must first determine whether

Mitchell has "exhibit[ed] an actual, subjective expectation of bodily privacy," and then

evaluate the justification for the intrusion. *Id.* (citation and internal quotation marks omitted).

In the prison context, the Fourth Amendment proscribes unreasonable searches of both

pretrial detainees and sentenced individuals, including unreasonable strip searches. *See Bell v.

Wolfish*, 441 U.S. 520, 558 (1979); *Harris*, 818 F.3d at 58 n.2. When evaluating a claim that

an isolated strip search infringed on an individual's Fourth Amendment rights, a court must

consider four factors in determining whether the search was reasonable: "(1) the scope of the particular intrusion; (2) the manner in which it is conducted; (3) the justification for initiating it; and (4) the place in which it was conducted." *Harris*, 818 F.3d at 63 (citing *Bell*, 441 U.S. at 559). A strip search violates the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean-Laurent v. Wilkerson,* 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (collecting cases), *aff'd* 461 F. App'x 18 (2d Cir. 2012).

Generally, courts in this District have held the administrative prison policy rule that "an inmate be strip-searched when he or she is placed in either administrative segregation or a restrictive housing unit is reasonable and valid." *Abrams v. Erfe*, No. 3:17-CV-1570 (CSH), 2018 WL 691714, at *10 (D. Conn. Feb. 2, 2018) (citing *Holloway v. Dep't of Corr.*, No. 3:11-CV-1290 (VLB), 2013 WL 4834657, at *5 (D. Conn. Sept. 10, 2013)). Here, Mitchell does not allege any facts to suggest that he was subjected to an unreasonable strip-search prior to his placement in the RHU. Accordingly, Mitchell has not pleaded a plausible Fourth Amendment violation arising from his being subject to a strip-search.

## 2.  Access to Social Media and Messages

An individual has a reasonable expectation of privacy in the contents of his or her home computer, but that expectation may be extinguished when a computer user transmits information over the internet or by e-mail. *See United States v. Lifshitz,* 369 F.3d 173, 190 (2d Cir. 2004). Courts have held the determination of "whether the Fourth Amendment applies to a user's Facebook content 'depends, *inter alia*, on the user's privacy settings.'" *United States v. Westley*, No. 3:17-CR-171 (MPS), 2018 WL 3448161, at *6 (D. Conn. July 17, 2018) (quoting *United States v. Meregildo*, 883 F. Supp. 2d 523, 525 (S.D.N.Y. 2012)); *see United*

*States v. Khan*, No. 15-cr-00286, 2017 WL 2362572, at *8 (N.D. Ill. May 31, 2017) (holding that a defendant could not claim a Fourth Amendment violation where he "did not maintain any privacy restrictions on his Facebook account, and his Facebook profile was viewable by any Facebook user").

Mitchell's allegations do not suggest that he had any reasonable expectation of privacy to his social media posts or messages due to privacy settings. Accordingly, for purposes of initial review, I discern no Fourth Amendment violation arising from prison official's access of Mitchell's social media postings or his messages.

### G.  Official Capacity

Mitchell's Amended Complaint indicates that he seeks relief against Defendants in their official capacities. He seeks an injunctive order to be removed from the SRG Program and returned to the general population. Am. Compl. ¶ 41.

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)). Although the Eleventh Amendment permits Mitchell to seek damages against Defendants in their individual capacities, claims for injunctive relief may not be asserted against Defendants in their individual capacities because they would not have the authority to provide such relief. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011); *Patterson v. Lichtenstein*, No. 3:18-cv-2130 (MPS), 2020 WL 837359, at *2 (D. Conn. Feb. 20, 2020). The Eleventh Amendment bars official capacity claims for monetary damages against Defendants (all state employees) but does not bar injunctive relief. *See, e.g.*, *Kentucky*, 473 U.S. at 169.

Mitchell may proceed against a defendant in his or her official capacity for injunctive or declaratory relief only to the extent he argues there is an ongoing constitutional violation. *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Further, any prospective relief regarding prison conditions must be "narrowly drawn, extend[] no further than necessary to correct the violation of a federal right, and [be] the least intrusive means necessary to correct the violation." *Brown v. Plata*, 563 U.S. 493, 530 (2011) (citing 18 U.S.C. § 3626(a)). In a prisoner case, a court should not enter "remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution." *Id.* at 531; *Abernathy v. Comm'r of Corr.*, No. 3:20-cv-628 (VAB), 2020 WL 5097566, at *3 (D. Conn. Aug. 28, 2020) ("[I]n the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons.").

Mitchell is proceeding in this case on claims of First Amendment retaliation and Fourteenth Amendment procedural due process violations arising from his SRG affiliation. I discern no facts to suggest any ongoing First Amendment retaliation against Mitchell.

But for purpose of initial review, I consider whether Mitchell will be subject to an ongoing Fourteenth Amendment procedural due process violation arising from his continued designation as an SRG inmate. Unlike an individual capacity claim for monetary damages under section 1983, personal involvement in the claimed constitutional violation is not a prerequisite to official capacity claims for injunctive relief. *See Hamilton v. Deputy Warden*, No. 15-CV-4031 (KBF), 2016 WL 6068196, at *13 (S.D.N.Y. Oct. 13, 2016). However, a claim for injunctive relief against a defendant in his or her official capacity may proceed only to the extent that the defendant has the authority to remedy the claimed ongoing constitutional

violation. *See Scozzari v. Santiago*, No. 3:19-cv-00229 (JAM), 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019). Thus, at this initial stage in the proceeding, I will permit Mitchell to proceed for official capacity injunctive relief for ongoing Fourteenth Amendment procedural due process violation against Defendant District Administrator Washington, who plausibly has authority to afford Mitchell the requested relief.

To the extent Mitchell asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See, e.g.*, *Kentucky*, 473 U.S. at 169.

## ORDERS

Based on the foregoing, I issue the following orders:

(1) Mitchell may proceed on his (1) First Amendment retaliation claim against Defendants Correctional Officer Lapointe, Correctional Officer Rivera, DHO Doe, SRG Coordinator Papoosha and District Administrator Washington; and (2) Fourteenth Amendment procedural due process claims against Defendants Officer Lapointe, DHO Doe, and District Administrator Washington in their individual capacities, and against Defendant District Administrator Washington in his official capacity.

All other claims are DISMISSED without prejudice. The clerk is instructed terminate Defendant Warden Guadarrama and Defendant Warden Dougherty from this action.

(2) The clerk shall verify the current work addresses for Defendants Correctional Officer Lapointe, Correctional Officer Rivera, SRG Coordinator Papoosha and District Administrator Craig Washington with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on

the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk is instructed to prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal Service is directed to effect service of the Complaint and this Order on Defendant District Administrator Craig Washington in his official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(4) The Clerk cannot effect service on a Doe or Roe defendant without that defendant's full name and current work address. Thus, Mitchell is directed to obtain this information for Defendant DHO John Doe during discovery and to file a notice containing the information with the court. Once a Doe Defendant has been identified, I will order that he or she be served with a copy of the Amended Complaint. Failure to identify a Doe Defendant by the conclusion of discovery will result in the dismissal of all claims against that Defendant.

(5) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6) Once service has been effected on all named Defendants, the court will issue a scheduling order setting deadlines for discovery and the filing of dispositive motions.

(7) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is

incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(8) Mitchell shall utilize the Prisoner E-filing Program when filing documents with the court. Mitchell is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED.**

New Haven, Connecticut

August 13, 2025

/s/*Sarah F. Russell*

SARAH F. RUSSELL

United States District Judge